# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

United States of America,

    Plaintiff,

v.

Roger Bruce Bugh,

    Defendant.

Criminal No. 11-0072 (PJS/SER)

**REPORT & RECOMMENDATION**

---

    Paul Murphy, Esq., United States Attorney's Office, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415 for Plaintiff.

    Douglas Olson, Esq., Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, Minnesota 55415, for Defendant.

---

STEVEN E. RAU, United States Magistrate Judge

    The above-captioned case comes before the undersigned United States Magistrate Judge on Defendant Bugh's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 31] and Motion to Suppress Statements, Admissions, and Answers [Doc. No. 32].[1] This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.[2]

    **I.**    **BACKGROUND**

    The Government filed an Indictment against Defendant Roger Bruce Bugh on February 24, 2011, charging Bugh with being a felon in possession of a firearm [Doc. No. 11]. This Court held a pre-trial motions hearing on April 6, 2011. Saint Paul Police Officer Mark Nelson

---

[1] The Parties asked to submit post-hearing briefs on the motions and the Court agreed. By letter dated April 14, 2011, Defendant Bugh declined to file a post-hearing brief and based his motions on the record before the Court.

[2] The Court has addressed Defendant's non-dispositive motions in a separate Order.

testified on behalf of the Government. The Court received thirteen exhibits into evidence. This matter is set for trial before United States District Judge Patrick J. Schiltz on May 24, 2011.

## II.    FACTS

The following facts were elicited from the testimony and exhibits introduced at the hearing. Officer Mark Nelson works for the St. Paul Police Department as a narcotics agent assigned to the Ramsey County Violent Crimes Enforcement Team. The task force generally investigates controlled substance and firearms violation.

In early January 2011, Officer Nelson executed a search warrant at an apartment in Inver Grove Heights. An individual arrested in connection to that search agreed to cooperate with police in exchange for leniency on narcotics charges he was facing (hereinafter this individual will be referred to as "the informant"). The informant, a convicted felon, indicated to Nelson that he could acquire a gun from an individual he knew as Roger. The informant told officers that Roger was a white male and was approximately 40 years old. Additionally, the informant stated that Roger carried a firearm and had been imprisoned for burglarizing ATMs. The informant also provided officers with Roger's phone number, (651) 373-1098.

Officer Nelson then spoke to Officer Rob Merrill, who was assigned to the FBI taskforce, in an effort to identify the individual the informant knew as Roger. When Nelson recited to Officer Merrill the informant's description of Roger, Officer Merrill stated that there was a good chance the informant was describing Roger Bugh. Officer Nelson then began an investigation of Bugh for firearms violations.

On January 19 and 20, 2011, Officer Nelson directed the informant to make phone calls to Bugh and law enforcement recorded those calls. In the first call, Bugh indicated he could possibly obtain a gun to sell to the informant from a woman he knew, who would in turn obtain

the gun from her boyfriend.  On the next call, the informant asked Bugh to obtain a gun quickly, and Bugh stated he was working on obtaining the gun from the woman.  During the third call with Bugh, the informant repeated his desire for Bugh to obtain him a gun and Bugh suggested he would contact an individual named "Mike" to arrange transportation to meet the informant.  On the next call, Bugh indicated the woman would use her boyfriend's car to pick up Bugh and then they would go to where the informant was waiting.  Bugh also indicated the woman was a heroin addict and that, if the informant could promise the woman oxycodone or heroin, the woman would be inclined to deliver the gun quickly.  The informant later called Bugh and stated he had obtained the oxycodone and Bugh replied he was waiting for the woman to pick him up.  On the next call, Bugh told the informant that the woman was on her way to pick him up.  The informant then made plans to meet Bugh at an apartment in St. Paul.

The meeting between the informant and Bugh took place in the parking lot of an apartment building near 7th Street and Johnson Parkway in St. Paul on January 20, 2011.  Officers, including Officer Nelson, went to the location with the informant and had the informant wear a recording/broadcasting microphone.  Bugh arrived in a Honda Odyssey van and the informant went to meet him.  Bugh sat in the front passenger seat while the informant sat in the rear passenger seat.  The informant then had a conversation with Bugh, who said "it's a fucking nice one."  After taking possession of the gun, the informant placed it on the rear driver's side passenger seat.  The informant gave the "bust signal" for the officers saying "it's a done deal" and then gave the back-up "bust signal" by verbally counting the money.  Officers heard the signals and arrested all the parties involved.  Bugh was standing just outside the vehicle when he was arrested.  Officers found and seized the pre-recorded buy money on the front driver's seat of the van, a black glove on the front passenger's seat, and a gun on the back driver's side seat.

After his arrest, officers took Bugh to the Ramsey County Law Enforcement Center. Officer Nelson interviewed Bugh within an hour of his arrest. The interview was recorded. After asking Bugh general biographical information, Officer Nelson read Bugh his *Miranda* rights before interviewing him. Officer Nelson also gave Bugh a written copy of his *Miranda* rights, which Bugh initialed and signed. In the interview, Bugh stated his cell phone number was (651) 373-1098. Officer Nelson called the number and the cell phone Bugh possessed at the time of his arrest rang and showed Officer Nelson's phone on the caller-ID. Officers then applied for and obtained a search warrant for the cell phone.[3]

### III.  DISCUSSION

Defendant Bugh moves to suppress the evidence seized from the van arguing the officers lacked probable cause to arrest Bugh and the search of the van did not fall within the automobile exception or the search incident to arrest exception. He also moves to suppress the statements he made after his arrest, contending the statements are the fruit of the illegal arrest. This Court disagrees and recommends that the motions be denied.

#### A.  Officers Had Probable Cause to Arrest Bugh

The Fourth Amendment guarantees "[t]he rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "Probable cause to make a warrantless arrest exists when, considering all the circumstances, police have trustworthy information that would lead a prudent person to believe that the suspect has committed or is committing a crime." *United States v. Parish*, 606 F.3d 480, 486 (8th Cir. 2010) (quoting *United States v. Velazquez-Rivera*, 366 F.3d 661, 664 (8th Cir. 2004)); *see also Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004). In

---

[3] Based on his April 14, 2011 letter, it does not appear that Bugh is challenging the search of his cell phone.

determining whether officers had probable cause for an arrest, a court examines the events leading up to the arrest and decides whether the "historical facts, viewed from the standpoint of an objectively reasonable police officer," constitute probable cause. *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S. Ct. 795, 800, 157 L. Ed. 2d 769 (2003). "A probability or substantial chance of criminal activity, rather than an actual showing of criminal activity" is sufficient. *United States v. Torres-Lona*, 491 F.3d 750, 756 (8th Cir. 2007). In evaluating whether there was probable cause, the court considers the collective information known to all the law enforcement officers. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 489 (8th Cir. 2010) (citing *White v. United States*, 448 F.2d 250, 254 (8th Cir. 1971)).

In this case, officers had probable cause to arrest Bugh. The Officers knew that Bugh was a convicted felon and therefore was prohibited from possessing a firearm. Nevertheless, the informant believed he could obtain a gun from Bugh and told police that Bugh carried a gun. During the calls the informant made, Bugh stated he could obtain a gun from a woman he knew. Finally, when the informant met Bugh, he gave the police the "bust signal," which indicated to police that Bugh had provided the informant a gun. This is sufficient information for police to believe that Bugh possessed the firearm and in so doing committed a crime. Because officers had probable cause to arrest Bugh, his warrantless arrest did not violate the Fourth Amendment.

### B. The Search of the Van Did Not Violate the Fourth Amendment

First, as the Government correctly points out, Bugh does not have standing to challenge the search of the van because there is no evidence that Bugh had an expectation of privacy in the van, which was driven by the woman and supposedly belonged to her boyfriend. *United States v. Crippen*, 627 F.3d 1056, 1063 (8th Cir. 2010) (mere passenger in vehicle did not have legitimate expectation of privacy in vehicle). Additionally, even if Bugh had standing to

challenge the search, the search did not violate the Fourth Amendment because it was incident to Bugh's arrest and it falls within the automobile exception.

### 1. The Search Was Incident to Bugh's Arrest

With respect to warrantless searches, the Supreme Court has reiterated "the basic rule of Fourth Amendment jurisprudence" as follows:

> The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted outside the judicial process without prior approval by judge or magistrate are *per se* unreasonable under the Fourth Amendment– subject only to a few specifically established and well-delineated exceptions.

*Horton v. California*, 496 U.S. 128, 133 n.4 (1990) (quoting *Mincey v. Arizona*, 437 U.S. 385, 390 (1978)). One of those exceptions is a search incident to arrest.

In order to protect officer safety and preserve evidence, a law enforcement officer may conduct a full search of an arrestee and the area within the arrestee's immediate control in a search made incident to an arrest. *United States v. Jones*, 479 F.3d 975, 978 (8th Cir. 2007) (citing *United States v. Hrasky,* 453 F.3d 1099, 1100-01 (8th Cir. 200)); *see also Chimel v. California,* 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969); *United States v. Robinson,* 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973). The area within an arrestee's immediate control is the area from which he or she might gain possession of a weapon or destructible evidence. *United States v. Lucas*, 898 F.2d 606, 609 (8th Cir. 1990). A search incident to arrest must be contemporaneous with the arrest. *Curd v. City Court of Judsonia, Arkansas*, 141 F.3d 839, 842 (8th Cir. 1998).

Unlike a pat-down search during an investigatory detention, an officer conducting a search incident to arrest may search not only for contraband, but also evidence that might be concealed or destroyed. *Id.*; *Jones*, 479 F.3d at 978; Hrasky, 453 F.3d at 1104. While the

rationale for a search incident to arrest is officer safety and to preserve evidence, the officer need not have any reason to believe that the individual is actually armed or that evidence of the crime will be found on his person. *United States v. Pratt*, 355 F.3d 1119, 1121 (8th Cir. 2004). "It is the fact of arrest that enables the officer to conduct a search, not a particularized suspicion as to the suspect's dangerousness." *Id.*

When the search incident to an arrest involves the passenger compartment of a vehicle, the Supreme Court allows the search only if: (1) the arrestee might have access to the vehicle at the time of the search; or (2) it is reasonable to believe the vehicle contains evidence of the offense of the arrest. *Arizona v. Gant*, --- U.S. ----, 129 S. Ct. 1710, 1723 (2009); *see also United States v. Hambrick*, 630 F.3d 742, 746 (8th Cir. 2011).

The search of the van falls within the search incident to arrest exception to the Fourth Amendment. The recording of the meeting between Bugh and the informant made it reasonable for officers to believe that the vehicle contained a firearm−something Bugh was prohibited from possessing. Police were aware that Bugh had promised to provide a gun to the informant and thus, it was reasonable to believe the gun was in the van. The search incident to Bugh's arrest did not violate the Fourth Amendment and Bugh's motion to suppress should be denied.

### 2. The Search Falls Within the Automobile Exception

The automobile exception to the Fourth Amendment allows police officers to conduct a warrantless search of a vehicle and containers within the vehicle whenever probable cause exists. *California v. Acevedo*, 500 U.S. 565, 580, 111 S. Ct. 1982, 1991-92, 114 L. Ed. 2d 619 (1991); *United States v. Sample*, 136 F.3d 562, 564 (8th Cir. 1998). Under this rule, police may search a vehicle if they have probable cause to believe that the vehicle contains contraband. *United States v. Payne*, 119 F.3d 637, 642 (8th Cir. 1997) (citing *Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.

Ct. 1975, 1981, 26 L. Ed. 2d 419 (1970)).  In such circumstances, the police may search every part of the car that may conceal the object of the search.  *Id.* (citing *Acevedo,* 500 U.S. at 573-76); *United States v. Thompson*, 906 F.2d 1292, 1298 (8th Cir. 1990).  "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Nolen*, 536 F.3d 834, 839 (8th Cir. 2008); *United States v. Fladten,* 230 F.3d 1083, 1085 (8th Cir.2000) (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)).

The officers had probable cause to search the van.  The information from the informant, recorded calls between Bugh and the informant, and information officers heard while monitoring the meeting between the informant and Bugh, all establish a fair probability that evidence of a crime would be found in the van.  Because the officers had probable cause, the search falls within the automobile exception and Bugh's motion to suppress should be denied.

## C. Bugh's Post-Miranda Statements Need Not Be Suppressed

Bugh also moves to suppress the statements he made to police as "fruit of the illegal warrantless arrest."  This Court has held, however, that Bugh's arrest was supported by probable cause and not illegal.  Further, the recording of the interview with Bugh clearly establishes that Bugh was read his *Miranda* rights before the officers asked Bugh any questions and Bugh waived those rights verbally and in writing.  Bugh's motion to suppress his post *Miranda* statements should be denied.

IV.     **RECOMMENDATION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Bugh's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 31] be **DENIED**; and

2. Defendant Bugh's Motion to Suppress Statements, Admissions, and Answers [Doc. No. 32] be **DENIED**.


Dated: April 25, 2011                           s/ Steven E. Rau_____
                                                STEVEN E. RAU
                                                United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **May 9, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.