UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ROGER BRUCE BUGH,

Defendant.

Case No. 11-CR-0072 (PJS/SER)
Civil No. 19-CV-2540 (PJS)

ORDER

Lisa D. Kirkpatrick, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Roger Bugh, pro se.

Defendant Roger Bugh was convicted after a jury trial of being a felon in possession of a firearm. ECF No. 74. After determining that Bugh qualified as an armed career criminal under the Armed Career Criminal Act ("ACCA"), the Court sentenced him to 188 months' imprisonment. ECF No. 96. The United States Court of Appeals for the Eighth Circuit affirmed Bugh's conviction and sentence on direct appeal. ECF No. 105.

This matter is before the Court on Bugh's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. ECF Nos. 111, 112. Bugh makes two claims:

First, relying on the recent decision of the United States Supreme Court in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), Bugh argues that the jury instructions given at his

trial were erroneous, and he asks the Court to grant him a new trial.  The Court agrees that, under *Rehaif*, Bugh's jury instructions were erroneous, but the Court finds that the error was harmless and therefore Bugh is not entitled to a new trial.

Second, seeking to benefit from another Supreme Court decision—*Johnson v. United States*, 135 S. Ct. 2551 (2015)—Bugh argues that he was improperly classified as an armed career criminal under the ACCA.  If Bugh is correct, he could not have been sentenced to more that 120 months in prison, and thus his 188-month sentence must be vacated.  *See* 18 U.S.C. §§ 924(a)(2) & (e).  The Court agrees that, under *Johnson*, Bugh no longer qualifies as an armed career criminal and therefore he must be resentenced.

## I.  BACKGROUND

Bugh was charged with being a felon in possession of a firearm after selling a handgun to an informant.  *See* ECF Nos. 100, 101, 102.  The case was tried in June 2011. At the close of trial, the jury was instructed that it could not convict Bugh unless it found that the government had proven three things beyond a reasonable doubt:  (1) that Bugh previously had been convicted "of a crime punishable by imprisonment for a term exceeding one year," (2) that Bugh "thereafter knowingly possessed a firearm . . . ," and (3) that "the firearm that [Bugh] possessed was transported across a state line at some time during or before [Bugh] possessed it."  ECF No. 72, Instr. No. 22.  Consistent with

Eighth Circuit precedent,[1] the jury was not instructed that Bugh had to *know* that he had previously been convicted of a crime punishable by imprisonment for more than one year.  The evidence against Bugh left no doubt about his guilt, and the jury quickly convicted him.  ECF Nos. 71, 74.

At sentencing, the Court had to determine whether Bugh was an armed career criminal under the ACCA.  A lot turned on that determination.  If Bugh was an armed career criminal, he would be subject to a 15-year mandatory *minimum*; if he was not, he would be subject to a 10-year statutory *maximum*.  18 U.S.C. §§ 924(a)(2) & (e).  To be sentenced as an armed career criminal, Bugh needed at least three prior qualifying convictions—that is, convictions for a "violent felony" or a "serious drug offense."  18 U.S.C. § 924(e).  The presentence investigation report ("PSR") found that Bugh had nine prior convictions for violent felonies, including:

- Three federal convictions for bank larceny or bank burglary, namely:

     (1) a 1991 conviction for bank larceny, in violation of 18 U.S.C. § 2113(b);[2]

---

[1]*See United States v. Thomas*, 615 F.3d 895, 899 (8th Cir. 2010) (holding that a defendant need not know that he was a felon in order to be convicted of being a felon in possession of a firearm; rather, "'the government need only prove [the] defendant's status as a convicted felon and knowing possession of the firearm'" (quoting *United States v. Kind*, 194 F.3d 900, 907 (8th Cir. 1999))).

[2]PSR ¶ 27; Dist. Minn. Case No. 4:91-CR-0007(2) (DEM/FEB).  The PSR and the government refer to this conviction as being for "bank burglary," which would be a violation of 18 U.S.C. § 2113(a).  PSR ¶ 27; ECF No. 116 at 7 n.1.  Court records show,

(continued...)

(2) a 1993 conviction for bank burglary, in violation of 18 U.S.C. § 2113(a);[3]

and (3) a 1998 conviction for bank larceny, in violation of 18 U.S.C.

§ 2113(b).[4]

- Four Minnesota convictions for burglary, namely: (1) a 1987 conviction

   for third-degree burglary;[5] (2) a 1989 conviction for third-degree burglary;[6]

---

[2](...continued)
however, that Bugh was convicted of violating § 2113(b), not § 2113(a). *See* Court Ex. 1. The Court thus refers to this as a conviction for "bank larceny." *See, e.g., United States v. Yockel*, 320 F.3d 818, 822-23 (8th Cir. 2003) (referring to a violation of 18 U.S.C. § 2113(b) as "bank larceny").

[3]PSR ¶ 28; Dist. Minn. Case No. 3:93-CR-0040 (PAM/JEC). Section 2113(a) is divisible, as its two paragraphs consist of two separate crimes (bank robbery and bank burglary). *United States v. Butler*, 949 F.3d 230, 234-36 (5th Cir. 2020); *United States v. Watson*, 881 F.3d 782, 785 n.1 (9th Cir. 2018). Convictions under the first paragraph of § 2113(a) are dubbed "bank robbery" convictions, while convictions under the second paragraph of § 2113(a) are dubbed "bank burglary" convictions. *Butler*, 949 F.3d at 232; *United States v. Williams*, 841 F.3d 656, 659 (4th Cir. 2016); *United States v. Almeida*, 710 F.3d 437, 440 (1st Cir. 2013). Bugh's indictment and plea agreement establish that his conviction was under the second paragraph of § 2113(a)—i.e., Bugh's conviction was for bank burglary, not bank robbery. *See* Court Ex. 2.

[4]PSR ¶ 30; Dist. Minn. Case No. 98-CR-0308(2) (PJS/RLE).

[5]PSR ¶ 24; Minn. Case No. 43951; ECF No. 1 at 1, 3; ECF No. 11 at 1.

[6]PSR ¶ 26; Minn. Case No. 4480331; ECF No. 1 at 1, 3; ECF No. 11 at 1.

(3) a 1998 conviction for third-degree burglary;[7] and (4) a 2005 conviction

for second-degree burglary.[8]

- A 1987 Minnesota conviction for second-degree assault.[9]

- And finally, a 2008 Wisconsin conviction for burglary, in violation of Wis.

  Stat. § 943.10(1m)(a).[10]

At sentencing, Bugh conceded that his Minnesota second-degree assault

conviction qualified as a violent felony under the ACCA.  ECF No. 93 at 5.  Bugh also

conceded that under Eighth Circuit precedent,[11] three of his Minnesota burglary

offenses qualified as violent felonies under what is known as the "residual clause" of

---

[7]PSR ¶ 29; Minn. Case No. 19-KX-97-002503.

[8]PSR ¶ 32; Minn. Case No. K9-05-3698.

[9]PSR ¶ 25; Minn. Case No. 4133377.

[10]PSR ¶ 35; Wis. Case No. 2008CF000056.

[11]*See, e.g.*, *United States v. Blahowski*, 324 F.3d 592, 594-95 (8th Cir. 2003) (finding convictions for Minnesota second- and third-degree burglary, which were based on burglaries of commercial buildings, qualified as violent felonies under the residual clause of the career-offender sentencing guidelines and relying on a prior ACCA case to reach that decision, as "there [is] no reason to conclude that these two identically worded clauses [one in the ACCA and one in the sentencing guidelines] ha[ve] different meanings"); *see also United States v. Mohr*, 407 F.3d 898, 901-02 (8th Cir. 2005) (following *Blahowski* to find that a prior Minnesota burglary conviction, which was based on a burglary of a commercial building, qualified as a violent felony under the sentencing guidelines, and stating that "[o]ur Court has reasoned that since burglary always creates a 'serious potential risk of physical injury to another' [i.e., meets the residual clause] it qualifies as a crime of violence").

the ACCA. *Id.* at 5-6; *see also* ECF No. 103 at 5-6. Because Bugh had no fewer than four

qualifying convictions, the Court found him to be an armed career criminal. ECF

No. 103 at 5-6. The Court declined to decide whether the other five convictions on

which the PSR relied were violent felonies, as Bugh needed only three violent felonies

to qualify as an armed career criminal. *Id.* at 6-7. The Court sentenced Bugh to

188 months' imprisonment. *Id.* at 12; *see also* ECF No. 96.

After Bugh began serving his sentence, the Supreme Court issued its decision in

*Johnson v. United States*, 135 S. Ct. 2551 (2015), which held that the residual clause of the

ACCA was unconstitutionally vague. *Johnson* fatally undermined the Eighth Circuit

precedent on which this Court had relied in finding that Bugh's three Minnesota

burglary convictions were violent felonies under the residual clause of the ACCA.

Bugh now argues that none of his three convictions qualify as violent felonies under the

ACCA, and thus he is not an armed career criminal. *See, e.g.*, ECF No. 111 at 2; ECF

No. 112 at 2-4, 9-10; *see also* ECF No. 114.

## II. ANALYSIS

### A. Rehaif *Claim*

Bugh first argues that the jury instructions given at his trial were erroneous in

light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019). In *Rehaif*, the Supreme Court held

that, in order for a defendant to be guilty of unlawfully possessing a firearm, he must

know not only that he possessed a firearm, but also that he was of a status that rendered such possession unlawful.  139 S. Ct. at 2194.  In other words, in order for Bugh to be guilty of being a felon in possession of a firearm, Bugh would have to know that he was a felon—i.e., that he had previously been convicted of a crime punishable by imprisonment for more than one year.  Bugh's jury was not instructed that it must find, beyond a reasonable doubt, that Bugh knew that he was a felon at the time that he possessed the firearm.  Under *Rehaif*, then, Bugh's jury was not properly instructed on all elements of his crime.

A defendant relying on a new right recognized by the Supreme Court may file a § 2255 motion within one year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  28 U.S.C. § 2255(f)(3).  The Court finds that *Rehaif* recognized a new right,[12] and that the

---

[12]In the Eighth Circuit, determining whether a right has been "newly recognized" for purposes of § 2255(f)(3) requires the same inquiry as determining whether a rule is "new" under *Teague v. Lane*, 489 U.S. 288 (1989).  *Headbird v. United States*, 813 F.3d 1092, 1095 (8th Cir. 2016).  Accordingly, a "newly recognized right" "'breaks new ground or imposes a new obligation on the States or the Federal Government.'"  *Id.* (quoting *Teague*, 489 U.S. at 301).  "Stated differently, 'a case announces a [new right] if the result is not *dictated* by precedent existing at the time the defendant's conviction became final.'"  *Id.* (quoting *Teague*, 489 U.S. at 301).  "A [right] is not dictated by existing precedent unless it would have been apparent to all reasonable jurists."  *Id.* (cleaned up; citations omitted).

(continued...)

newly recognized right is retroactively applicable to cases on collateral review.[13]  The

problem for Bugh is that he cannot succeed on the merits of his claim, as he cannot

possibly show that the failure to instruct the jury on an element of his offense "'had

substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v.*

*Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776

(1946)).[14]

---

[12](...continued)

*Rehaif* "overturn[ed] the long-established interpretation of an important criminal statute . . . ."  *Rehaif*, 139 S. Ct. at 2201 (Alito, J., dissenting).  In fact, *Rehaif* disagreed with every court of appeals that had addressed the same issue.  *See id.* at 2210 & n.6. *Rehaif* was not dictated by existing precedent, and its holding was obviously not apparent to all reasonable jurists.  The right asserted by Bugh was thus newly recognized in *Rehaif*.

[13]Because *Rehaif* announced a substantive right that narrowed a criminal statute, the Court finds that it is retroactively applicable to cases on collateral review.  *See, e.g., Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004) (explaining that new substantive rules generally apply retroactively "because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him" (cleaned up; citations omitted)).

[14]The failure to instruct a jury on an element of a crime is clearly not structural error, and thus is subject to harmless-error analysis of some type.  *See Neder v. United States*, 527 U.S. 1 (1999); *United States v. Beckham*, 917 F.3d 1059, 1064 (8th Cir. 2019); *United States v. Janis*, 810 F.3d 595, 598 (8th Cir. 2016); *United States v. Carlson*, 787 F.3d 939, 947 (8th Cir. 2015); *United States v. Dvorak*, 617 F.3d 1017, 1024 (8th Cir. 2010); *United States v. Inman*, 558 F.3d 742, 749 (8th Cir. 2009).

When addressing the merits of § 2255 claims similar to Bugh's, other courts have applied the harmless-error analysis that was adopted in *Brecht*.  *See, e.g., United States v. Smith*, 723 F.3d 510, 514-17 (4th Cir. 2013) (finding that *Brecht* provided the correct

(continued...)

Prior to his trial, Bugh had been convicted of ten felonies as an adult.  *See* PSR

at ¶¶ 24-30, 32, 35.  Each time he was convicted, Bugh stood in court and listened as a

judge sentenced him to serve more than a year in prison.  Bugh actually served more

than a year in prison with respect to most of his convictions.  *See id.*  There is no

question whatsoever that Bugh knew that he had previously been convicted of a crime

punishable by more than one year's imprisonment.  Because the government would

undoubtedly have proven that Bugh had knowledge of his status as a felon,[15] the error

in Bugh's jury instruction did not have "'substantial and injurious effect or influence in

determining the jury's verdict.'"  *Brecht*, 507 U.S. at 623 (citation omitted); *United States*

---

[14](...continued)
standard of review for a § 2255 motion which argued that a jury instruction was
erroneous in light of a new Supreme Court case interpreting the statute of conviction);
*United States v. Dago*, 441 F.3d 1238, 1244-46 (10th Cir. 2006) (same); *United States v.
Montalvo*, 331 F.3d 1052, 1058-59 (9th Cir. 2003) (same); *Murr v. United States*, 200 F.3d
895, 905-06 (6th Cir. 2000) (same).  This Court does likewise.

[15]Bugh appears to argue that—under *Rehaif*—a defendant must "ha[ve]
knowledge of *being in violation of federal law*."  ECF No. 111 at 4 (emphasis added); *see
also* ECF No. 112 at 3-4.  That is not true.  *Rehaif* held "that the word 'knowingly'
applies both to the defendant's conduct [i.e., possessing the gun] and to the defendant's
status."  *Rehaif*, 139 S. Ct. at 2194.  Accordingly, the government "must show that the
defendant knew he possessed a firearm and also that he knew he had the *relevant status*
when he possessed it."  *Id.* (emphasis added).  In other words, the government needed
to prove that Bugh knew that he was a felon, not that Bugh knew that it was illegal for a
felon to possess a firearm.  *See United States v. Davies*, 942 F.3d 871, 874 (8th Cir. 2019)
("Under *Rehaif*, [the defendant] needed to know only that he had been convicted of a
crime punishable by imprisonment for a term exceeding one year at the time he
possessed the firearms.").

*v. Hollingshed*, 940 F.3d 410, 415-16 (8th Cir. 2019) (holding, on direct appeal, that there was not a "'reasonable probability that, but for the error [in the jury instruction], the outcome of the proceeding would have been different'" because the defendant had previously served two different stints in prison exceeding one year (citation omitted)).[16]

For these reasons, the Court denies Bugh's § 2255 motion insofar as it is based on *Rehaif*.

## B. Johnson *Claim*

Bugh next argues that the Court erred in finding that he was an armed career criminal under the ACCA. The government responds by arguing that (1) Bugh's claim is barred by the one-year statute of limitations and (2) Bugh's claim fails on the merits. The Court will address the government's arguments in turn.

---

[16]*See also United States v. Moore*, 954 F.3d 1322, 1337-38 (11th Cir. 2020) (holding, on direct appeal, that "it is inconceivable—much less 'a reasonable probability'—that Appellants can show 'that, but for the error, the outcome of the proceeding would have been different,'" because both appellants had previously served lengthy prison sentences (92 and 57 months), both had previously been convicted of being felons in possession, and one, "[r]emarkably . . . even b[ore] a tattoo of the number 92 on his left arm, representing the length of his previous sentence" (citation omitted)); *United States v. Mancillas*, 789 F. App'x 549, 550 (7th Cir. 2020) (holding, on direct appeal, that any error in the jury instructions did not affect the defendant's substantial rights because he had nine prior felony convictions—"a number that itself renders a lack of awareness all but impossible"—and had already served "multi-year stints of incarceration"); *United States v. Benamor*, 937 F.3d 1182, 1188-89 (9th Cir. 2019) (holding, on direct appeal, that there was "no probability that" an erroneous jury instruction impacted the jury's verdict because the defendant had seven prior felony convictions, had been sentenced to over one year in prison for three of those felonies, and had previously been convicted of being a felon in possession of a firearm).

1. "Actual Innocence" and the Statute of Limitations

As noted, a defendant must generally file a § 2255 motion that relies on a newly recognized right within one year of "the date on which the right asserted was initially recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3). Bugh's claim that he was improperly sentenced under the ACCA is based on *Johnson v. United States*, 135 S. Ct. 2551 (2015), which was decided on June 26, 2015. Bugh did not file his § 2255 motion until September 17, 2019, more than four years later. *See* ECF No. 112. Bugh argues that his untimeliness should be excused, though, because he is "actually innocent" of being an armed career criminal. ECF No. 114.

The Supreme Court has held that a prisoner may receive habeas relief— even if his claim is barred by the statute of limitations—if he can demonstrate "actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "In other words, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *Id.* at 392. The Supreme Court has explained that "'[t]his rule, or fundamental miscarriage of justice exception, is grounded in the "equitable discretion" of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons.'" *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The Supreme Court has found that the actual-innocence exception applies when the defendant is actually innocent of his crime of conviction or is actually innocent of his *capital* sentence. *See, e.g., Bousley v. United States*, 523 U.S. 614 (1998) (crime of conviction); *Sawyer v. Whitley*, 505 U.S. 333 (1992) (capital sentence). The Supreme Court has left open the question of whether the actual-innocence exception applies when the defendant is actually innocent of a *non*-capital sentence. *Dretke v. Haley*, 541 U.S. 386 (2004).

The situation in the Eighth Circuit is more complicated, and takes a bit of explaining:

### a.  First-decided case

The Eighth Circuit first addressed the question of whether the actual-innocence exception applies to non-capital sentences in *Jones v. Arkansas*, 929 F.2d 375 (8th Cir. 1991). The defendant sought habeas relief under 28 U.S.C. § 2254, arguing that he had been sentenced under a habitual-offender statute that applied only to defendants who had been convicted of a felony committed after June 30, 1983, even though he had committed his felony prior to June 30, 1983. *Id.* at 378. The Eighth Circuit found that the defendant was correct and "that sentencing [the defendant] under the habitual offender statute . . . , which was not in force when [the defendant] committed his

-12-

offenses, violates the ex post facto clause of the Constitution." *Id.* at 380 (citations omitted).

The government did not dispute that the defendant's rights had been violated, but argued that, because the defendant had not previously presented his claim to the state courts, his claim was procedurally defaulted. The Eighth Circuit disagreed, finding that the defendant's claim fell within the actual-innocence exception to the procedural-default rule:

> If one is "actually innocent" of the sentence imposed, a federal habeas court can excuse the procedural default to correct a fundamentally unjust incarceration. It would be difficult to think of one who is more "innocent" of a sentence than a defendant sentenced under a statute that *by its very terms* does not even apply to the defendant.

*Id.* at 381 (citations and footnotes omitted).

Because *Jones* is the earliest opinion of the Eighth Circuit addressing the question of whether the actual-innocence exception applies to non-capital sentences, *Jones* is binding on this Court—even if panels of the Eighth Circuit have subsequently issued conflicting decisions—unless *Jones* has been overruled by the Eighth Circuit sitting en banc. *See Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("We definitively rule today, in accordance with the almost universal practice in other federal circuits, that when faced with conflicting panel opinions, the earliest opinion must be followed 'as it should have controlled the subsequent panels that created the conflict.'"

(internal citation omitted) (quoting *T.L. ex rel. Ingram v. United States*, 443 F.3d 956, 960 (8th Cir. 2006))).

### b. *Casting doubt on* Jones

After *Jones* was decided, multiple panels of the Eighth Circuit expressed doubt that the actual-innocence exception applies to challenges to non-capital sentences. *See, e.g.*, *Waring v. Delo*, 7 F.3d 753, 757-58 (8th Cir. 1993); *Higgins v. Smith*, 991 F.2d 440, 441 (8th Cir. 1993). But at least one panel of the Eighth Circuit acted consistently with *Jones*, vacating a non-capital sentence on the basis of a procedurally defaulted claim "'to avoid manifest injustice.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *United States v. Neely*, 979 F.2d 1522, 1524 (11th Cir. 1992)).

In *Embrey v. Hershberger*, 131 F.3d 739 (8th Cir. 1997) (en banc), the Eighth Circuit—sitting en banc—expressed deep skepticism about the notion that the actual-innocence exception applies to non-capital sentences. But a careful reading of *Embrey* makes clear that the court did not actually *hold* that the actual-innocence exception does not apply to non-capital sentences, and thus the court did not overrule *Jones*.

The defendant in *Embrey* was convicted under the Federal Bank Robbery Act and the Federal Kidnaping Act for his role in robbing a bank, taking a banker hostage, and fleeing across a state line. *Id.* at 739. He was sentenced to two consecutive 20-year

terms of imprisonment—one for each count of conviction.  *Id.*  He then brought a § 2255 motion (or, really, a slew of § 2255 motions) challenging "his *conviction* under the Federal Kidnaping Act."  *Id.* at 739-40 (emphasis added).  Specifically, the defendant claimed that "all of [the] unlawful activities" in which he engaged "were violations of the [Federal Bank Robbery Act]," and that Congress intended that Act "to be a comprehensive statute that provided punishment for what he did to the exclusion of all other possibly applicable federal statutes."  *Id.* at 740.  Thus, said the defendant, he could be convicted only under the Federal Bank Robbery Act, and not under the Federal Kidnaping Act, and consequently one of his 20-year sentences had to be vacated.  *Id.* at 739-40.  In order to get around the fact that his claim was procedurally barred because he had already filed "three or four" identical motions, the defendant argued that his motion was properly before the court because he was "actually innocent" of his *sentence* under the Federal Kidnaping Act.  *Id.* at 740.

The Eighth Circuit disagreed.  The court noted that, "[i]n the first place, [the defendant's] quarrel is not really with his sentence, it is with the fact that he was convicted.  There is no legal error in the sentence, because, if he was correctly convicted, the sentence was a perfectly proper one, and [he] does not maintain that it was not."  *Id.*  But after acknowledging that the defendant was *not* challenging his non-capital sentence, the court went on to discuss whether the actual-innocence exception would

apply to someone who *was* challenging his non-capital sentence.  *Id.* at 740-41.  The

court's discussion was plainly dicta.  *See, e.g.*, *Edwards v. Prime Inc.*, 602 F.3d 1276, 1298

(11th Cir. 2010) ("[R]egardless of what a court says in its opinion, the decision can hold

nothing beyond the facts of that case." (citations omitted)).

In short, although *Embrey* undoubtedly expressed the view that the actual-

innocence exception does not apply to non-capital sentences, *Embrey* did so only in

dicta, and *Embrey* therefore did not overrule *Jones* (which it did not even mention).

### c.  Post-Embrey *actual-innocence cases*

Subsequent to *Embrey*, the Eighth Circuit has issued conflicting decisions about

whether the actual-innocence exception applies to non-capital sentences.  In *Lindsey v.*

*United States*, the Eighth Circuit found that a challenge to a non-capital sentence was

procedurally defaulted and broadly stated that:  "We have previously held . . . that the

actual innocence exception to the procedural default rule is not available to remedy

errors in noncapital sentencing.  *See Embrey v. Hershberger*, 131 F.3d 739, 740 (8th Cir.

1997) (en banc)."[17]  615 F.3d 998, 1001 (8th Cir. 2010).  This statement was incorrect, as

---

[17]In other post-*Embrey* cases, the Eighth Circuit has said in dicta that the
actual-innocence exception does not apply to non-capital sentences.  For example, in
*United States v. Wiley*, the court said in dicta that "[e]ven if" the defendant had produced
evidence that he was "actually innocent of the sentence imposed, which he did not, he
could not prevail because . . . the actual-innocence exception does not apply to
noncapital sentences."  245 F.3d 750, 752 (8th Cir. 2001) (citation omitted).  *Wiley* did not
even mention *Jones* or *Wilson*, which directly contradict its assertion.  In *Sun Bear v.*

(continued...)

the language in *Embrey* to which it referred was dicta, not a holding.  More importantly, this statement ignored the fact that the Eighth Circuit had previously held that the actual-innocence exception *is* "available to remedy errors in noncapital sentencing."  *Id.* The Eighth Circuit had so held in both *Jones* and *Wilson*, neither of which was mentioned in *Lindsey*.

In any event, *Lindsey* is easily distinguishable from *Jones* and *Wilson*.  The sentence in *Jones* was unlawful because it was imposed under a habitual-offender statute that did not apply to the defendant.  *Jones*, 929 F.2d at 380-81.  The sentence in *Wilson* was unlawful because it exceeded the statutory maximum.  *Wilson*, 997 F.2d at 431.  But the sentence in *Lindsey* was not unlawful.  The defendant complained of an error in the computation of his sentencing guidelines range, *Lindsey*, 615 F.3d at 999-1001, but he did not complain that his sentence was "imposed without, or in

---

[17](...continued)
*United States*, the court (in dicta) quoted the dicta from *Wiley*, without acknowledging that it was dicta, or mentioning *Jones* or *Wilson*.  644 F.3d 700, 705-06 (8th Cir. 2011) (en banc).  And in *Roundtree v. United States*, the court remarked in a footnote (without mentioning *Jones* or *Wilson*) that the actual-innocence exception "requires proof that [the defendant] was factually innocent of the crime, not merely that there was error in imposing a sentence enhancement."  885 F.3d 1095, 1098 n.3 (8th Cir. 2018) (citation omitted).  But the defendant had not argued actual innocence to excuse his procedural default.  *See* Appellant *Anders* Br., *Roundtree v. United States*, No. 16-3298 (8th Cir. Oct. 19, 2016), Doc. No. 00813056679; *see also* Appellee Br. at 10 n.2, *Roundtree v. United States*, No. 16-3298 (8th Cir. Dec. 2, 2016), Doc. No. 00813086284.  Moreover, since the court found that the defendant could not show prejudice, it had no need to address whether he could show actual innocence.

excess of, statutory authority," *Sun Bear v. United States*, 644 F.3d 700, 705 (8th Cir. 2011)

(en banc) ("Sun Bear's 360–month sentence is not unlawful.  An unlawful or illegal

sentence is one imposed without, or in excess of, statutory authority.").

The Eighth Circuit came full circle back to *Jones* and *Wilson* just a year ago in

*Lofton v. United States*, 920 F.3d 572 (8th Cir. 2019).  As in this case, the defendant filed a

§ 2255 motion, alleging that, under *Johnson*, he no longer qualified as an armed career

criminal under the ACCA.  And as in this case, the government argued that the

defendant was not entitled to relief because his claim was procedurally barred.  *Id.*

at 576.  Citing *Wilson*—and saying not one word about *Embrey* (even though the author

of *Embrey* was on the panel)—the Eighth Circuit held that the actual-innocence

exception applied to the defendant's challenge to his non-capital sentence, because that

sentence was alleged to be in excess of the statutory maximum.  *Id.* at 576-77.  (The

defendant had been sentenced to 327 months' imprisonment, which would vastly

exceed the 120-month statutory maximum if he were not an armed career criminal.)

The Eighth Circuit held that the defendant's "'illegal sentence presents a 'miscarriage of

justice' that § 2255 permits us to correct, despite his failure to raise the issue earlier."  *Id.*

(citations omitted).[18]

_____

[18]Although the Eighth Circuit used the term "miscarriage of justice," this Court
understands the miscarriage-of-justice exception as requiring a showing of "actual
innocence," and thus it uses the terms interchangeably.  *See McQuiggin*, 569 U.S. at 392;
(continued...)

*Lofton* is materially indistinguishable from this case,[19] and it is consistent with

*Jones*, which has never been overruled by the Eighth Circuit.  Therefore, the Court holds

---

[18](...continued)
*Bousley*, 523 U.S. at 622; *Sawyer*, 505 U.S. at 339.

The Eighth Circuit uses the terms interchangeably as well.  *See, e.g.*, *Watts v. Norris*, 356 F.3d 937, 941 (8th Cir. 2004) ("There is another exception to the procedural-bar doctrine—actual innocence, also known as the miscarriage-of-justice exception."); *see also Charboneau v. United States*, 702 F.3d 1132, 1136 (8th Cir. 2013) (stating that a defendant may only bring a procedurally defaulted claim in a § 2255 proceeding if he can demonstrate either cause and prejudice or actual innocence); *Jennings v. United States*, 696 F.3d 759, 764 (8th Cir. 2012) (same); *Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005) (same); *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001) (same); *United States v. Morgan*, 230 F.3d 1067, 1069-70 (8th Cir. 2000) (same); *United States v. Bailey*, 235 F.3d 1069, 1071-72 (8th Cir. 2000) (same).

[19]In *Day v. McDonough*, the Supreme Court observed that a "[statute of] limitations defense resembles other threshold barriers—exhaustion of state remedies, procedural default, nonretroactivity—[that] courts have typed 'nonjurisdictional,'" and that "it would make scant sense to distinguish [with respect to the standard for a court's sua sponte consideration of the defense] ADEPA's time bar from other threshold constrains on federal habeas petitioners."  547 U.S. 198, 205-09 (2006) (citations omitted). This Court concludes that it would also make "scant sense" to apply the actual-innocence standard differently to the statute-of-limitations defense than to other "threshold barriers."  The Supreme Court has given no indication that application of the actual-innocence standard differs depending on the type of procedural bar at issue. Whatever wisdom there may have been in treating a statutory rule (e.g., the statute of limitations) differently from a judge-made rule (e.g., procedural default), *see McQuiggin*, 569 U.S. at 401-05 (Scalia, J., dissenting), this approach was rejected by the Court in *McQuiggin*.  *See also Phillips v. United States*, 734 F.3d 573, 580-82 & n.8 (6th Cir. 2013) (rejecting that the actual-innocence exception excuses untimeliness only when there are newly discovered facts showing actual innocence, as *McQuiggin* drew upon *Bousley*, which was a claim of actual innocence based on new law); *but see United States v. Jones*, 758 F.3d 579 (4th Cir. 2014) (finding, in a case involving an erroneously calculated guidelines range, that "*McQuiggin* does not apply to habeas claims based on actual innocence of a sentence").

that Bugh's claim, like the claim of the defendant in *Lofton*, falls within the actual-

innocence exception to the statute of limitations.

2.  Merits

As noted, a defendant is an armed career criminal under the ACCA if he has at

least three prior convictions for "a violent felony" or "a serious drug offense."  18 U.S.C.

§ 924(e).  Bugh does not have any prior convictions for serious drug offenses, so the

question is whether he has at least three prior convictions for violent felonies.

At the time that Bugh was sentenced, a conviction could qualify as a "violent

felony" under any of three clauses of the ACCA: the force clause, the enumerated-

offenses clause, or the residual clause.  18 U.S.C. § 924(e)(2)(B); *Forrest v. United States*,

934 F.3d 775, 776-77 (8th Cir. 2019).  After Bugh was sentenced, *Johnson* held that the

residual clause was unconstitutionally vague.  *Johnson*, 135 S. Ct. at 2557.  Thus, in order

for a conviction to qualify as "violent," it must now fall within either the force clause or

the enumerated-offenses clause.

Bugh's PSR found that he had been convicted of nine violent felonies.  It is clear

that, post-*Johnson*, two of those nine convictions are for violent felonies.[20]  It is equally

_____

[20]First, Bugh's 1987 Minnesota conviction for second-degree assault is a violent
felony under the force clause.  *United States v. Lindsey*, 827 F.3d 733, 738-40 (8th Cir.
2016).

Second, Bugh's 1987 Minnesota conviction for third-degree burglary is a violent
(continued...)

-20-

clear that, post-*Johnson*, four of those nine convictions are not for violent felonies.[21]  That

---

[20](...continued)
felony under the enumerated-offenses clause.  *See United States v. McArthur*, 850 F.3d 925, 938 (8th Cir. 2017); *compare* Minn. Stat. § 609.582, subd. 3 (1986) (defining third-degree burglary as "enter[ing] a building without consent and with intent to steal or commit any felony or gross misdemeanor"), *with* Minn. Stat. § 609.582, subd. 3 (1988) (defining third-degree burglary as "enter[ing] a building without consent and with intent to steal or commit any felony or gross misdemeanor while in the building, or enter[ing] a building without consent and steal[ing] or commit[ting] a felony or gross misdemeanor while in the building").

[21]Briefly:

*Wisconsin Burglary.*  The Eighth Circuit has found that burglary in violation of Wis. Stat. § 943.10(1m)(a) is not a violent felony under the ACCA.  *See United States v. Holston*, 773 F. App'x 336, 336-37 (8th Cir. 2019); *see also United States v. Webster*, 784 F. App'x 975, 975 (8th Cir. 2019).

*Federal Bank Larceny.*  Bugh's two convictions for bank larceny in violation of 18 U.S.C. § 2113(b) are not violent felonies under the ACCA as they do not satisfy either the force clause or the enumerated-offenses clause.

As to the force clause:  The force clause defines "violent felony" to include felonies that have "as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i).  The bank-larceny statute makes it unlawful to "take[] and carr[y] away, with intent to steal or purloin, any property or money or any other thing of value . . . belonging to, or in the care, custody, control, management, or possession of any bank . . . ."  18 U.S.C. § 2113(b).  The statute clearly does not require that the bank larceny be committed with any sort of force.

As to the enumerated-offenses clause:  The enumerated-offenses clause defines "violent felony" to include felonies that are "burglary, arson, or extortion."  18 U.S.C. § 924(e)(2)(B)(ii).  Bank larceny—which simply requires taking and carrying away property from a bank—is clearly not burglary, arson, or extortion.

(continued...)

leaves three convictions—one for second-degree burglary and two for third-degree

burglary, all in violation of Minnesota law, and all committed after Minnesota's

burglary statute was amended in 1988. PSR ¶¶ 26, 29, 32; ECF No. 11 at 1. Whether

Bugh is an armed career criminal depends on whether these three convictions qualify as

violent felonies under either the force clause or the enumerated-offenses clause of the

ACCA.

As to the force clause: The government concedes that two of the three burglary

convictions are not violent felonies under the force clause. The government points out

---

[21](...continued)

*Federal Bank Burglary.* Bugh's conviction for bank burglary in violation of 18 U.S.C. § 2113(a) is not a violent felony under the ACCA, as it does not satisfy either the force clause or the enumerated-offenses clause.

As to the force clause: A defendant is guilty of bank burglary if he "enters or attempts to enter any bank . . . with intent to commit in such bank . . . any felony affecting such bank . . . ." 18 U.S.C. § 2113(a). The statute clearly does not require that a defendant use, attempt to use, or threaten to use force against any person.

As to the enumerated-offenses clause: "Generic burglary" has three elements: (1) an "unlawful or unprivileged entry into, or remaining in," (2) "a building or structure," (3) "with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 599 (1990). The bank-burglary statute is missing the first element—an *unlawful* entry or remaining in. The bank-burglary statute therefore sweeps more broadly than generic burglary. *See, e.g., Cole v. United States*, Nos. 4:04-CR-4-CLC-WBC-1; 4:17-CV-23-CLC, 2018 U.S. Dist. LEXIS 32069, at *9 (E.D. Tenn. Feb. 28, 2018) ("Because the statute omits the element of 'an *unlawful* or *unprivileged* entry,' the federal bank burglary statute is broader than generic burglary and therefore a violation of that statute cannot qualify as an ACCA predicate 'violent felony' under the enumerated offense clause." (citation omitted)).

that, with respect to the third conviction, the PSR does not indicate whether it was for first-degree, second-degree, or third-degree burglary.  PSR ¶ 26.  The government argues that it is possible that this conviction was for first-degree burglary—and, if it was, it is possible that it is a violent felony under the force clause.  *See United States v. Bennett*, 12-CR-0144 (ADM/JJG), 18-CV-0993 (ADM), 2018 WL 3597669, at *2 (D. Minn. July 26, 2018).  The mystery is easily solved, however.  Both the complaint and indictment filed in this action make clear that it was for third-degree burglary, not first-degree burglary.  ECF No. 1 at 1, 3; ECF No. 11 at 1.  Hence, none of the three post-1988 burglary convictions are violent felonies under the force clause.

As to the enumerated-offenses clause:  The enumerated-offenses clause defines "violent felony" to include felonies that are "burglary, arson, or extortion."  18 U.S.C. § 924(e)(2)(B)(ii).  There is no doubt that Bugh's three convictions were for "burglary" as anyone would use that term in normal conversation.  But determining whether a particular conviction was for "burglary" for purposes of the ACCA is not such a commonsensical endeavor.  Instead, the Court must apply what is known as the "categorical approach."  *Taylor v. United States*, 495 U.S. 575, 588-99 (1990).[22]

---

[22]If a statute is "divisible" (as opposed to "indivisible"), courts can apply what is called the "modified categorical approach."  *Mathis v. United States*, 136 S. Ct. 2243, 2248-50 (2016).  A statute is "divisible" if it lists alternative *elements* to commit a crime—thereby defining multiple crimes.  *Id.* at 2249.  When a statute is composed of alternative elements that create different crimes—and some of those crimes would

(continued...)

The categorical approach involves comparing the elements of the offense of

conviction (e.g., second-degree burglary under Minnesota law) with the elements of the

"generic" version of that offense (e.g., generic burglary). *See Taylor*, 495 U.S. at 588-99.

"A crime counts as 'burglary' under the [enumerated-offenses clause] if its elements are

---

[22](...continued)
qualify as violent felonies and some would not—the "modified categorical approach" allows courts to look beyond the statute's text to a limited set of documents (such as indictments) to determine which crime the defendant was convicted of committing. *Id.*

But, in determining whether a statute is "divisible," the Court must be careful not to confuse alternative *elements* with alternative *means* of satisfying a single element. *Id.* at 2248-50. A jury must unanimously find that every element of a crime has been proven beyond a reasonable doubt, but a jury need not agree on the particular means by which the defendant satisfied a particular element. *Id.* If a statute is composed of alternative means to commit a single crime, then the modified categorical approach cannot be applied. *Id.* at 2253.

The government contends that Minnesota's burglary statute is divisible, and thus that the Court may apply the "modified categorical approach" to Bugh's Minnesota burglary convictions. ECF No. 118. But the Eighth Circuit has already held that the Minnesota burglary statute is not divisible. *United States v. McArthur*, 850 F.3d 925, 937-38 (8th Cir. 2017). That part of *McArthur* has not been abrogated, and it rests on solid footing. Minnesota courts have consistently indicated that the burglary statute presents two distinct means to commit a single intent/crime element. *See, e.g., Munger v. State*, 749 N.W.2d 335, 338 (Minn. 2008) ("[T]he plain language of the burglary statute formulates two separate and distinct *means*, signified by the disjunctive conjunction 'or' and separated by a comma, by which a person can violate the statute." (emphasis added)); *State v. Gonzales*, No. A15-0975, 2016 WL 3222795, at *2-3 (Minn. Ct. App. June 13, 2016) (finding that the defendant's right to a unanimous jury verdict was not violated by the jury instructions, "[b]ecause entering with intent to commit a crime and entering and committing a crime are *different means of committing a single element,*" and thus the jury did not need to unanimously agree as to the means by which the defendant committed that element (emphasis added)).

the same as, or narrower than, those of the generic offense." *Mathis*, 136 S. Ct. at 2243.

If the elements of the offense of conviction sweep more broadly than the elements of the

generic offense—if, for example, it is possible to commit second-degree burglary under

Minnesota law without committing generic burglary—then the offense of conviction

does not qualify as a violent felony under the enumerated-offenses clause of the ACCA.

*Id.* at 2248-49.

"Generic burglary" has three elements: (1) an "unlawful or unprivileged entry

into, or remaining in," (2) "a building or structure," (3) "with intent to commit a crime."

*Taylor*, 495 U.S. at 599.  Minnesota's second- and third-degree burglary statutes (as

amended in 1988) make it illegal to "enter a building without consent" if the defendant

*either* enters the building "with intent to commit a crime" *or* "commits a crime while in

the building."  *See* Minn. Stat. § 609.582, subds. 2 & 3.[23]  Courts have labeled burglary

statutes such as Minnesota's as "trespass-plus-crime" statutes, as they simply require

unlawful entry ("trespass") followed by commission of some independent crime ("plus

crime").  *See, e.g.*, *Van Cannon v. United States*, 890 F.3d 656, 664 (7th Cir. 2018).  Only

four states appear to have trespass-plus-crime burglary statutes: Minnesota, Montana,

---

[23]Minnesota's second-degree burglary statute allows the commission of any "crime" to qualify.  Minn. Stat. § 609.582, subd. 2; *see also* Minn. Stat. § 609.02, subd. 1 (defining "crime").  Minnesota's third-degree burglary statute limits the "crime" to felonies or gross misdemeanors.  Minn. Stat. § 609.582, subd. 3; *see also* Minn. Stat. § 609.02, subds. 2 & 4 (defining "felony" and "gross misdemeanor").

Tennessee, and Texas. *See, e.g.*, *United States v. Herrold*, 941 F.3d 173, 178 (5th Cir. 2019) (en banc).[24]

In *United States v. McArthur*, the Eighth Circuit held that the elements of third-degree burglary under Minnesota law were broader than the elements of generic burglary, and thus that Minnesota third-degree burglary was not a violent felony for purposes of the ACCA. 850 F.3d 925, 937-40 (8th Cir. 2017). The Eighth Circuit pointed out that there were two ways to commit third-degree burglary in Minnesota. The first alternative is to enter a building without consent and with intent to steal or commit any felony or gross misdemeanor. The Eighth Circuit found that, "[b]ecause the first alternative of the Minnesota statute contains all of the elements in the [generic] definition, convictions based on that alternative count as violent felonies." *Id.* at 938.

The second alternative is to enter a building *without* intending to steal or commit any felony or gross misdemeanor—but then, while remaining in the building, to steal or commit any felony or gross misdemeanor. The Eighth Circuit found that this alternative swept more broadly than the generic definition. The problem was one of timing: The Eighth Circuit found that, under the generic definition, the perpetrator must intend to commit a crime either (1) when he enters the building or (2) "at the moment he 'remains'—i.e., "at the moment when a perpetrator, who at one point was

_____

[24]Michigan has a home-invasion statute that is similar. *See* Mich. Penal Code §§ 750.110a(2), (3), (4)(a).

lawfully present, exceeds his license and overstays his welcome." *Id.* at 939.  Under the

second alternative, however, the perpetrator could form the intent to commit a crime at

any time before he leaves the building.  Thus, the Eighth Circuit reasoned, a perpetrator

could commit Minnesota third-degree burglary without committing generic burglary.

*Id.* at 840.

    This aspect of the *McArthur* decision was recently abrogated by the United States

Supreme Court in *Quarles v. United States*, 139 S. Ct. 1872 (2019).  The Supreme Court

rejected decisions (such as *McArthur*) that had held that the "remaining-in" version of

generic burglary "occurs only if a person has the intent to commit a crime *at the exact*

*moment* when he or she *first* unlawfully remains in a building or structure."  *Id.* at 1875.

Instead, held the Supreme Court, the "remaining-in" version of generic burglary

"occurs when a person forms the intent to commit a crime *at any time* while unlawfully

remaining in a building or structure."  *Id.*

    Following *Quarles*, the Eighth Circuit has not yet revisited the question of

whether second- or third-degree burglary in Minnesota is a violent felony under the

enumerated-offenses clause of the ACCA.  The Seventh Circuit has done so,

however—and held that, notwithstanding *Quarles*, Minnesota's second-degree burglary

statute still sweeps more broadly than generic burglary.  *Chazen v. Marske*, 938 F.3d 851,

859-60 (7th Cir. 2019).  Like the Eighth Circuit in *McArthur*, the Seventh Circuit in

*Chazen* found that the first alternative under the Minnesota statute—entering a building

without consent and with intent to commit a crime—"qualifies as generic burglary." *Id.*

at 859. The problem was with the second alternative—entering a building without

consent and without the intent to commit a crime, but later committing a crime while

still present in the building. The Seventh Circuit found the second alternative

problematic for reasons that it had explained in its earlier decision in *Van Cannon v.*

*United States*:

> [T]he [second] alternative in the Minnesota statute doesn't
> require proof of intent to commit a crime *at all*—not at *any*
> point during the offense conduct. The government
> maintains that intent to commit a crime is implicit because
> the statute requires proof of a completed crime within the
> trespassed building. But not all crimes are intentional; some
> require only recklessness or criminal negligence.

890 F.3d at 664. In *Chazen*, the Seventh Circuit found that its reasoning in *Van Cannon*

was "unaffected by the Supreme Court's most recent decision in *Quarles*." 938 F.3d

at 860.

This Court agrees with both premises of the Seventh Circuit's opinion. First, this

Court agrees that, to commit generic burglary as defined by *Taylor*, a perpetrator must

at some point form an "intent to commit a crime." *Taylor*, 495 U.S. at 598. And second,

this Court agrees that it is possible for a perpetrator to commit second- or third-degree

burglary under Minnesota law by acting recklessly or negligently—i.e., without ever

forming an intent to commit a crime.  Thus, this Court agrees with the Seventh Circuit

that neither second- nor third-degree burglary under Minnesota law qualifies as a

violent felony under the ACCA because their elements sweep more broadly than the

elements of generic burglary.  To elaborate:

A crime generally consists of both a physical element (sometimes referred to as

the "actus rea") and a mental element (sometimes referred to as the "mens rea").

1 Wayne R. LaFave, Substantive Criminal Law § 5.1, p. 446 (3d ed. 2018) (hereinafter

"LaFave").  As Professor LaFave has explained, however, the terms "mental element"

and "mens rea" are "somewhat too narrow to be strictly accurate, for they include

matters that are not really mental at all."  *Id.*

> [S]o far as the mental element is concerned, (1) some crimes
> (like most of the common law crimes) require "subjective
> fault"—actually a bad mind of some sort; (2) others require
> only "objective fault"—fault which is not a matter of the
> mind; and (3) others require no fault at all, either subjective
> (mental) or objective (non-mental), such statutes providing
> instead for "liability without fault."

*Id.* § 5.1(a), p. 448.

This hierarchy is reflected in the Model Penal Code, which defines four types of

criminal culpability: "purposely, knowingly, recklessly or negligently."  Model Penal

Code § 2.02(a); *see also United States v. Bailey*, 444 U.S. 394, 404 (1980) ("The different

levels in th[e] hierarchy are commonly identified, in descending order of culpability, as

purpose, knowledge, recklessness, and negligence." (citations omitted)).  The Model

Penal Code also recognizes that some statutes define "strict liability" crimes— that is,

crimes that require no culpability whatsoever (subjective or objective).  Model Penal

Code § 2.05.

    *Taylor*'s definition of "generic burglary"—"an unlawful or unprivileged entry

into, or remaining in, a building or other structure, with intent to commit a

crime"—clearly requires that the perpetrator act with the highest level of culpability:

purpose, or specific intent.  495 U.S. at 599.[25]  A perpetrator does not commit generic

burglary unless he unlawfully enters or remains in a building having formed in his

mind an intent to commit a crime.  *See* LaFave, § 5.2(e), p. 477 (citing common-law

burglary as an example of a specific-intent crime, because "common law burglary

requires a breaking and entry into the dwelling of another, but in addition to the mental

state connected with these acts it must also be established that the defendant acted 'with

---

[25]The common-law concept of "specific intent" "corresponds loosely" with the Model Penal Code's concept of "purpose."  *Bailey*, 444 U.S. at 405; *see also United States v. Carr*, 314 F. Supp. 3d 272, 282 (D.D.C. 2018) (explaining that "[s]pecific intent—or purpose, in the language of the Model Penal Code—requires that it be the offender's 'conscious object' to bring about a particular result" (citations omitted)).

intent to commit a felony therein.'").[26]  Typically (but not always), the crime that the perpetrator intends to commit is some type of theft.

Minnesota's burglary statute is broader than generic burglary as defined by *Taylor*.  To commit generic burglary, a perpetrator must at some point form the intent to commit a crime.  But to commit Minnesota burglary, a perpetrator does not have to form an intent to commit a crime.  Instead, the perpetrator can enter or remain in the building without intending to commit a crime, as long as he actually commits a crime while in the building.  As the Seventh Circuit pointed out, a perpetrator can *commit* a crime without *intending* to commit a crime, because some Minnesota crimes "require only recklessness or criminal negligence."  *Van Cannon*, 890 F.3d at 664.

The government does not dispute that, on its face, the Minnesota burglary statute sweeps more broadly than generic burglary.  The government argues, however, that the

---

[26]If the language of *Taylor* was not sufficiently clear, the Supreme Court's reasoning left no doubt that generic burglary requires specific intent (or purpose). *Taylor* relied on two sources in formulating its definition of generic burglary:  the LaFave & Scott treatise and the Model Penal Code.  *Taylor*, 495 U.S. at 598 & n.8.  Both of those sources define burglary as requiring specific intent (or purpose) to commit a crime.  *See* W. LaFave & A. Scott, Substantive Criminal Law § 3.5(a), p. 303 (1986) ("[B]urglary requires a specific intent to commit a felony."); *id.* § 8.13(e), p. 474 ("[T]he prevailing view in the modern codes is that an intent to commit any offense will do."); American Law Institute, Model Penal Code § 221.1 (1980) ("A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with purpose to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter."); *id.* § 2.02(2)(a) (stating that "[a] person acts purposely with respect to . . . the nature of his conduct . . . [if] it is his conscious object to engage in conduct of that nature . . . .").

Minnesota Supreme Court narrowed the scope of the Minnesota burglary statute in

*State v. Garcia-Gutierrez*, 844 N.W.2d 519 (Minn. 2014).

In *Garcia-Gutierrez*, several defendants were charged with first-degree burglary

of a home in violation of Minn. Stat. § 609.582, subd. 1(b).  That provision of the

Minnesota burglary statute "aggravates what would otherwise be a second-degree

burglary to a first-degree [burglary] if the burglar possesses a 'dangerous weapon'

when 'entering or at any time while in the building.'"  *Garcia-Gutierrez*, 844 N.W.2d

at 520.  None of the defendants brought a dangerous weapon to the home.  Instead, the

defendants stole a safe from the home, and, unbeknownst to them, the safe contained a

firearm.  *Id.* at 520-21.  The defendants did not realize that they had "possessed" the

firearm until the burglary was completed and they forced open the safe.  *Id.* at 521.

The defendants contended that, because they did not know that the safe

contained a firearm, they could not be convicted of a burglary offense that required

"possession" of a dangerous weapon.  *Id.*  The Minnesota Supreme Court disagreed.

The Court held that the statute contains no requirement that a perpetrator know that he

possesses a dangerous weapon; all that is required under the statute is that the

perpetrator actually possess a dangerous weapon.  *Id.* at 522-23.

In its opinion, the Minnesota Supreme Court acknowledged a strong public

policy against interpreting criminal statutes to impose strict liability.  *Id.* at 524.  The

court held, however, that the burglary statute "does not implicate that principle because the statute does not impose strict liability." *Id.* Instead, the statute "has a mens rea for the underlying offense of burglary" and "therefore does not create a strict liability crime." *Id.*

The government apparently reads *Garcia-Gutierrez* to hold that a perpetrator does not commit burglary under Minnesota law unless he acts with specific intent or purpose—with what *Taylor* called "intent to commit a crime." 495 U.S. at 599. But *Garcia-Gutierrez* said no such thing. *Garcia-Gutierrez* said only that burglary requires *a* mens rea; it did not say that burglary requires a *particular* mens rea. As this Court has already explained, there are several types of mens rea: "purpose, knowledge, recklessness, and negligence." *Bailey*, 444 U.S. at 404; *see also* Model Penal Code § 2.02 (defining the four types of criminal culpability as "purposely, knowingly, recklessly or negligently"). The Minnesota Supreme Court has specifically described negligence as a type of mens rea. *See In re Welfare of A.J.B.*, 929 N.W.2d 840, 850 (Minn. 2019). To say that burglary requires *a* mens rea—and thus is not a strict-liability crime—is not to say that burglary requires anything more than negligence.

The Minnesota burglary statute is clear that someone who enters a building without consent and then "commits a crime while in the building" is guilty of burglary. "Crime" is statutorily defined as "conduct which is prohibited by statute and for which

the actor may be sentenced to imprisonment, with or without a fine." Minn. Stat.

§ 609.02, subd. 1. Nothing in the language of the burglary statute—and nothing in

*Garcia-Gutierrez*—limits "a crime" to crimes that require an intent or purpose. And

thus, a perpetrator can commit burglary in Minnesota without ever forming an "intent

to commit a crime." *Taylor*, 495 U.S. at 599.

A number of decisions of the Minnesota Court of Appeals confirm this point.

That court has, for example, upheld several second-degree burglary convictions where

defendants entered a home without consent and, while in the home, committed the

crime of stalking. Typical of these cases is *State v. Hanson*, A16-0467, 2017 WL 393873

(Minn. Ct. App. Jan. 30, 2017). In *Hanson*, the defendant pursued a woman who lived in

the same apartment building. While the woman was away, the defendant entered her

apartment without her consent and "cleaned it, shampooed the carpets, lit candles,

rearranged the living room, and left gifts and flowers . . . ." *Id.* at *3. The Minnesota

Court of Appeals affirmed the defendant's conviction for second-degree burglary. The

court explained that "[a] person is guilty of stalking when he engages 'in conduct which

the actor knows *or has reason to know* would cause the victim under the circumstances to

feel frightened, threatened, oppressed, persecuted, or intimidated . . . .'" *Id.* at *2

(quoting Minn. Stat. § 609.749, subd. 1 (2014) (emphasis added)). The court found that

the defendant had committed stalking while in the victim's apartment because he

"knew *or should have known* that his actions would cause [the victim] to feel threatened or frightened."  *Id.* at *3 (emphasis added).[27]

Minnesota's stalking statute clearly requires only negligence.  *See In re Welfare of A.J.B.*, 929 N.W.2d at 850 (discussing how "the mens rea requirement built into the [stalking] statute is broad," requiring only "a negligence mens rea").  And yet in *Hanson* and similar cases, the Minnesota Court of Appeals has upheld burglary convictions based on the independent crime of stalking.  *See, e.g., Fordyce v. State*, A19-0648, 2020 WL 54280 (Minn. Ct. App. Jan. 6, 2020) (finding a sufficient factual basis for the defendant's plea of guilty to second-degree burglary because the defendant had committed the crime of stalking by entering the victim's screen porch without her consent and taping two sexually explicit notes to her door); *State v. Haberman*, A12-1269, 2013 WL 3490978 (Minn. Ct. App. July 15, 2013) (affirming a burglary conviction based on the independent crime of stalking where the defendant broke into his former girlfriend's unoccupied apartment so that he could retrieve some of his belongings and talk to her when she arrived home).

---

[27]The Minnesota Supreme Court later held Minn. Stat. § 609.749, subd. 2(6) unconstitutional under the First Amendment.  *See In re Welfare of A.J.B.*, 929 N.W.2d at 853-56.

Disorderly conduct is another crime that requires only negligence.[28]  And yet, in

*State v. Boyd,* A07-0875, A07-0876, 2008 WL 4224363 (Minn. Ct. App. Sept. 16, 2008), the

Minnesota Court of Appeals upheld a first-degree burglary conviction based on the

independent crime of disorderly conduct.  In *Boyd*, the defendant entered a relative's

home without permission, intending only to pick up her sister.  *Id.* at *1.  In other

words, the defendant entered the house without intending to commit a crime.  Multiple

individuals were present in the home, and all of them had been drinking.  *Id.*  A fight

ensued between the defendant and the other individuals.  The defendant testified that

she did not hit anyone, but she grabbed a couple of the individuals and wrestled her

sister up the stairs.  *Id.*  The other individuals testified that the defendant engaged in

more violent conduct.  *Id.*  The jury found the defendant guilty of first-degree burglary

and disorderly conduct, but acquitted her of assault and damage-to-property charges.

*Id.* at *1, *4.

The court of appeals affirmed the defendant's first-degree burglary conviction,

finding that the defendant "entered a building without consent" and "committed a

crime (disorderly conduct) while in the building."  *Id.* at *2.  Notably, the jury in *Boyd*

---

[28]Minnesota defines disorderly conduct to include an individual "[e]ngag[ing] in offensive, obscene, abusive, boisterous, or noisy conduct or in offensive, obscene, or abusive language tending reasonably to arouse alarm, anger, or resentment in others," while "knowing, *or having reasonable grounds to know* that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace."  Minn. Stat. § 609.72, subd. 1 (emphasis added).

acquitted the defendant of two crimes requiring intent (assault and damage to

property), but convicted her of a crime requiring mere negligence (disorderly conduct).

*Boyd* provides yet another example of the Minnesota Court of Appeals finding a

violation of the Minnesota burglary statute by a defendant who committed an

independent crime that did not require intent.  *See also State v. Krumrie*, A17-1509,

A17-1510, 2018 WL 3014675 (Minn. Ct. App. June 18, 2018) (affirming a burglary

conviction based on the independent crime of disorderly conduct); *State v. Hanson*, A07-

1078, 2008 WL 4299638 (Minn. Ct. App. Sept. 23, 2008) (affirming a burglary conviction

based on the independent crime of terroristic threats, which requires only

recklessness).[29]

---

[29]The government also argues that Bugh must demonstrate a "realistic
probability" that Minnesota will apply its burglary statute in a non-generic
manner—i.e., that the state will charge an individual with burglary based on his
commission of an independent crime that does not require intent.  ECF No. 116 at 19-20.
The government's argument is based on *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007).

     The government appears to read *Duenas-Alvarez* to hold that a defendant
challenging a determination that a conviction is a predicate under the enumerated-
offenses clause must show not only that the text of the statute under which he was
convicted is facially broader than the generic version of the crime, but also that the
government has actually applied the statute in that non-generic way.  The Court does
not read *Duenas-Alvarez* so broadly.  The Court notes that in *Mathis*—a decision that
post-dates *Duenas-Alvarez*—the Supreme Court found that the elements of Iowa's
burglary statute were facially broader than "generic" burglary because the statute
criminalized not just breaking and entering into buildings, but also breaking and
entering into "land, water, or air vehicle[s]."  136 S. Ct. at 2250-51.  The Supreme Court
held that the "undisputed disparity" between "the elements of Mathis's crime of

(continued...)

In sum, generic burglary requires that the perpetrator intend to commit a crime;
Minnesota burglary does not. The "undisputed disparity" between "the elements of
[Bugh's] crime of conviction ([Minnesota] burglary)" and "the elements of the relevant
ACCA offense (generic burglary) . . . resolves this case." *Mathis*, 136 S. Ct. at 2251.
Bugh's three (post-1988) Minnesota burglary convictions are not violent felonies for
purposes of the ACCA. With only two predicate convictions, Bugh is not an armed
career criminal under the ACCA, and his 188-month sentence must be vacated.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,
IT IS HEREBY ORDERED THAT:

---

[29](...continued)
conviction (Iowa burglary)" and "the elements of the relevant ACCA offense (generic
burglary) . . . resolves this case." *Id.* at 2251. The Supreme Court said nothing about
whether Iowa had ever charged someone for burglarizing a land, water, or air vehicle.
*See also Brown v. United States*, 929 F.3d 554, 557-59 (8th Cir. 2019) (noting that a
non-divisible burglary statute which criminalized burglarizing not just buildings but
also "freight cars, booths, and fishing boats" was overbroad on its face and thus "a
'realistic probability' exists on the face of the statute itself" that it would be applied to a
non-generic burglary (cleaned up)).

Even if the government's reading of *Duenas-Alvarez* is correct, however, this
order cites multiple decisions in which the Minnesota Court of Appeals has upheld
burglary convictions despite the fact that the independent crime did not require the
defendant to act "with intent to commit a crime." *Taylor*, 495 U.S. at 599. And thus,
even if Bugh were required to show that Minnesota's burglary statute has been applied
in a non-generic way, he would have no difficulty doing so.

1.     The government's motion to supplement its response [ECF No. 117] is

GRANTED.

2.     Defendant Roger Bruce Bugh's motion to vacate, set aside, or correct his

conviction or sentence under 28 U.S.C. § 2255 [ECF Nos. 111, 112] is

GRANTED IN PART and DENIED IN PART.

   a.     The motion is DENIED insofar as it is based on defendant's claim

   of error under *Rehaif v. United States*, 139 S. Ct. 2191 (2019).

   b.     The motion is GRANTED insofar as it is based on defendant's claim

   of error under *Johnson v. United States*, 135 S. Ct. 2551 (2015).

3.     The government is ORDERED to submit a letter to the Court by May 22,

2020, explaining how much of defendant's sentence has already been

served (taking into consideration any good-time credit).  After receiving

the government's letter, the Court will decide how to proceed.

Dated:  May 11, 2020                          s/Patrick J. Schiltz
                                              Patrick J. Schiltz
                                              United States District Judge